## JOHN TICE *et al.* v. STATE.

No. A-3426—Opinion Filed Oct. 7, 1920.

(192 Pac. 434.)

(Syllabus.)

**INTOXICATING LIQUORS — Unlawful Conveyance — Insufficiency of Evidence.** In a prosecution for conveying intoxicating liquor, evidence held insufficient to sustain a conviction.

*Appeal from County Court, Harmon County;*
*E. C. Abernathy, Judge.*

James Tice and J. P. Tice were convicted of unlawfully conveying intoxicating liquor, and they appeal. Reversed.

*A. M. Stewart* and *S. A. Fowler,* for plaintiffs in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall,* Asst. Atty. Gen., for the State.

DOYLE, P. J. Plaintiffs in error, James and J. P. Tice, were jointly charged, tried, and convicted of the crime of conveying intoxicating liquor. The court did not submit the question of punishment to the jury. Upon the verdict finding the defendants guilty as charged in the information, the court sentenced James Tice to be confined in the county jail for 90 days, and to pay a fine of $350, and sentenced J. P. Tice to be confined for 30 days in the county jail, and to pay a fine of $50, and ordered that the sentence of said J. P. Tice on account of his youth and his previous good reputation be suspended pending good behavior. To reverse the judgments they appeal.

The assignments of error go to the insufficiency of the evidence to support the verdict, and the refusal to give requested instructions and exceptions taken to certain instructions given. The information charges that the defendants, acting together, did, on or about the 16th day of April, 1917, unlawfully convey and transport "two quarts of whiskey from the public highway about the half-mile line between sections 3 and 10 in township 2 north of range 26 W. I. M., to about the half-mile line between sections 2 and 11 also of township 2 north of range 26 W. I. M., all in said county and state, and a better description cannot be given, for the reason there are no other or better ways of describing said points known to informant."

W. A. Horton, deputy sheriff, testified:

"About the 16th of April last year Mr. Smotherman called me and told me that he had found some whiskey out west of his house. We went down there. I marked the bottle, and left it there, and came back to town and reported to Sheriff Gambill. I went back out there with Mr. Gambill, and we found another bottle of whiskey. We were called back out there on the same day, and on the third trip we found that the whiskey had been moved east about one-half mile. I know this was the same whiskey because I had marked the bottle. On the third trip we met these defendants on the road south of town about one-half mile, coming this way."

W. P. Smotherman testified:

"I lived then about one mile south of town. I remember on the 16th day of April, last year, of seeing a car coming along the section line. It stopped, and some one got out of the car there. I went out there where people had been dumping rubbish, and I moved a piece of tin and found a quart of whiskey. I went and told Mr. Horton it was there. Then we went back down there, and he picked it up and said it was whiskey, and he said, 'We will mark it and watch to see who comes after it.' Later we saw a car with two men stop three or four minutes, then turn around and come back to town. Mr. James Tice and a young man were in the car. I was present with the officers when the whiskey was found the second time, it was something like a half-mile east. I did not see this whiskey in the possession of any one."

J. N. Street testified:

"I am city marshal of Hollis.. I remember there was some whiskey found south of town. I went out there in the car to the place where the whiskey was reported to have been found. While there I saw a car coming from the east, and turn north towards Hollis, and it met the sheriff's car coming from Hollis."

J. W. Thompson testified:

"I live a half mile south of Hollis. I saw two men pass my house. They went east to the branch and stopped and came back. I don't know who it was."

J. C. Gambill, sheriff of Harmon county, testified:

"I was notified that some whiskey had been found south of town. I went out there with Mr. Horton, and found two quarts of whiskey. I left it where it was, and told Mr. Smotherman to watch it.   I came back to town and got a field glass, and saw a car coming west, and saw it turn around and go back east, but I could not see who was in it. I started out, and about half a mile south of town I met Mr. Tice and young Tice in a car."

The foregoing is in substance the whole testimony.

At the conclusion of the evidence offered by the state the defendants moved the court to instruct the jury to return a verdict of not guilty. The court overruled the motion and submitted the case to the jury, with the result above indicated.

Under the provisions of the act of criminal procedure, if at any time after the evidence on either side is closed, if the court deem it insufficient to warrant a conviction, it may advise the jury to acquit the defendant. Section 5896, Rev. Laws 1910.

The evidence was entirely circumstantial, and the only fact appearing from the testimony that can be said to create a suspicion of the defendant's guilt was that the defendants drove along the highway and stopped near where the whiskey was found, and then drove back. Not another fact or circumstance appearing from the testimony connects these defendants in the remotest degree

of conveying the whisky. It follows that the court was in error in refusing to direct a verdict of acquittal at the close of the evidence for the state.

In cases of this kind jurors are not unlikely to find their verdict upon strong suspicion or mere probability, and where as in this case, the state relies solely upon circumstantial evidence, the court should always instruct the jury upon the law of circumstantial evidence, and that such evidence ought to be, not only consistent with the defendant's guilt but inconsistent with any other rational conclusion. In this case the court failed to instruct on the law of circumstantial evidence, and the necessary inference is that the jury found their verdict upon a mistaken view of the law. Reaching this conclusion, it is unnecessary to notice the other assignments of error. Because the evidence is insufficient to warrant a conviction, or to sustain the verdict, the judgment is reversed.

ARMSTRONG and MATSON, JJ., concur.